IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE CORDISH COMPANIES, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 14-2211-JWL-JPO |
| ) | |
| DICKENS LAW LLC, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs The Cordish Companies, Inc. ("Cordish"), Lounge KC, LLC, d/b/a Mosaic Lounge ("Lounge") and Kansas City Live Block 126 Entertainment, LLC ("Block 126") (collectively "Plaintiffs") offer the following suggestions in opposition to Defendants' Motion to Dismiss that was filed on July 16, 2014.

**Introduction**

Defendants Dickens Law LLC, Linda Dickens ("Dickens") and Austin Johnston (collectively "Defendants") have filed a Motion to Dismiss both counts in Plaintiffs' Complaint for failure to state a claim. As to *Count I – RICO Claim Against All Defendants*, Defendants argue that it should be dismissed for failure to state a "pattern of racketeering activity." As to *Count II – Defamation Against Dickens*, Defendants argue that it should be dismissed for failing to state any defamatory statements that are not protected by absolute privilege. Finally, Defendants argue that, if the Court dismisses Count I but not Count II for failure to state a claim, the Court should decline to exercise supplemental jurisdiction over Count II and dismiss it for lack of subject matter jurisdiction. As these are the only reasons for dismissal raised by Defendants at this time, these suggestions will address only these three issues.

**<u>Plaintiffs Have Pled a Pattern of Racketeering Activity</u>**

One element necessary to a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") is a "pattern of racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (citing 18 U.S.C. § 1962). Such a pattern "'requires at least two acts of racketeering activity' within a 10-year period." *Id.* (citing 18 U.S.C. 1961(5)). In addition to this, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original). Here, Defendants only question the sufficiency of Plaintiffs' pleading as to the second of these two requirements, known as the continuity prong.

Continuity can be shown in two ways: either the pattern is long-standing but complete (closed-end continuity), or the pattern is ongoing and threatens to extend into the future (open-ended continuity). *Id.* at 241-42 "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" are not sufficient to show *closed-end* continuity. *Id.* at 242. However, "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* Thus, a plaintiff may properly bring a RICO claim based on *open-ended* continuity even before *closed-ended* continuity can be established. *Id.* "In such cases, liability depends on whether the *threat* of continuity is demonstrated." *Id.* (emphasis in original).

Here, Plaintiffs have alleged a series of racketeering acts by Defendants over the course of four months that threaten to continue into the future. Plaintiffs allege that Defendants' racketeering activity *began* on December 10, 2013, with an attempt to obtain money from Plaintiffs through the wrongful use of fear of economic harm, in violation of 18 U.S.C. § 1951. *Complaint*, ¶ 45.a. Plaintiffs allege that Defendants *continued* to engage in those kind of

racketeering acts (violations of 18 U.S.C. § 1951) through February 2014. *Id.* Plaintiffs allege that Defendants' racketeering activity expanded and *continued* in March 2014 with several acts of wire fraud, in violation of 18 U.S.C. § 1343, and at least one act of obstruction of justice and witness tampering, in violation of 18 U.S.C. §§ 1503 & 1512. *Complaint*, ¶ 45.b-c. Defendants engaged in all these acts of racketeering to advance the purposes of their associated-in-fact enterprise; namely, to "exert[] public pressure on Plaintiffs, on many different fronts and using many different methods, with the goal of forcing Plaintiffs to pay Defendants large amounts of money either in settlement to make the pressure stop or by way of wrongfully-obtained court judgments.". *Complaint*, ¶¶ 41 & 46. Defendants have not yet achieved their purpose (and hopefully will not ever achieve it), and they have already shown a willingness to employ multiple racketeering acts to further that purpose, so there is an implicit threat that Defendants will continue to further their purpose through racketeering acts in the coming months and possibly years. Defendants explicitly threatened as much from the very start, when they threatened to "move forward on all fronts" unless Plaintiffs agreed to "a resolution" to stop it. *Complaint*, ¶¶ 14-15; *Exhibit A* of *Complaint*, p. 6. These pleaded facts are sufficient to state the open-ended continuity portion of Plaintiffs' RICO claims against Defendants.

     As Defendants point out in their *Memorandum in Support of Defendants' Motion to Dismiss* (hereinafter "*Defendants' Memorandum*"), two of the fronts on which Defendants are moving forward against Plaintiffs, to further their RICO enterprise, are the ongoing lawsuits in the Circuit Court of Jackson County, Missouri, and the U.S. District Court for the Western District of Missouri. *Defendants' Memorandum*, pp. 4, 7, & 13. Defendants are generally correct that "courts do not construe an attorneys' conduct in representing a client the type of activity

which Congress sought to address through RICO." *Id.* at 13. However, that is only true when the attorney's conduct in representing a client does not involve racketeering activity.

> Appreciation for the unremarkable notion that the operation or management test does not reach persons who perform routine services for an enterprise should not, however, be mistaken for an absolute edict that an attorney who associates with an enterprise can never be liable under RICO. An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. . . . Behavior prohibited by § 1962(c) will violate RICO regardless of the person to whom it may be attributed, and we will not shrink from finding an attorney liable when he crosses the line between traditional rendition of legal services and active participation in directing the enterprise.

*Handeen v. Lemaire*, 112 F.3d 1339, 1348-49 (8th Cir. 1997) (internal citations omitted). In *Handeen*, for example, the Eighth Circuit held that a plaintiff successfully stated a RICO claim against a law firm by alleging facts tending to show that the firm had some part in directing the enterprise's affairs. *Id.* at 1350. Here, Plaintiffs have alleged that Defendants' conduct in representing their clients in the two referenced lawsuits has already gone beyond legitimate conduct of attorneys into the illegal racketeering acts of wire fraud, witness tampering, and obstruction of justice. *Complaint*, ¶ 45. The Defendants' willingness to advance these two lawsuits through a series of racketeering acts, which in turn advances the overall purpose of their RICO enterprise, is an implicit threat that they will continue to use such means as the litigation continues. Thus, these are further facts sufficient to state the open-ended continuity portion of Plaintiffs' RICO claims against Defendants.

Additionally, it should be noted that Plaintiffs' pleading of open-ended continuity is also sufficient to support the "conspiracy" portion of their RICO claim against Defendants. Plaintiffs allege that "Defendants have conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c)." *Complaint*, ¶ 44. In addition, Plaintiffs allege that "Defendants have conspired to

conduct the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d)." *Complaint*, ¶ 45. This conspiracy of course contemplated the racketeering activity already committed by Defendants, but it also contemplates further racketeering activity in the future. Defendants' implicit and explicit threats of further racketeering activity are facts that support the "conspiracy" aspect of Plaintiffs' RICO claims against Defendants. Thus, Plaintiffs have sufficiently pled this aspect of the RICO claim as well.

### **Defamatory Statements Are Not Absolutely Privileged**

Before determining the pleading sufficiency of Plaintiffs' defamation claim against Dickens, the Court must decide which State's defamation law applies. In doing so, the Court should apply the choice of law rules of Kansas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "The rule in [Kansas] is that the law of the state where the tort occurred— *ex loci delicti*—should apply." *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). This means that "the situs of the injury determines the governing law." *Id.* However, neither the Kansas Supreme Court nor the Kansas Court of Appeals has specifically addressed the situs of the injury in a defamation case. Plaintiffs suggest that the situs of defamation injury is where the plaintiff's reputation is actually injured.

Here, Plaintiffs have alleged publication of defamatory statements in media outlets that are located in Kansas City, Missouri, and serve the Kansas City metropolitan area (parts in Missouri and parts in Kansas). The Kansas City Star (newspaper), KCTV (television), KSHB (television), Fox 4 KC (television), and KMBZ (radio) are all *local* media outlets for the Kansas City metropolitan area. *Complaint*, ¶¶ 26, 27, 28, & 30. Thus, the publication of Dickens' defamatory statements, as alleged in the Complaint, occurred predominantly in the Kansas City metropolitan area, causing injury to Plaintiffs' business reputations *in that metropolitan area*.

Moreover, Dickens specifically directed her defamatory statements to cause injury to Plaintiffs' business operations in the Kansas City Power & Light District ("the District"), located in Kansas City, Missouri. Plaintiff Lounge operates the Mosaic Lounge in the District. *Complaint*, ¶ 2. Plaintiff Block 126 owns the land and is the landlord for the Kansas City Live portion of the District. *Complaint*, ¶ 3. Dickens' defamatory statements specifically reference the District and its ownership. *Complaint*, ¶ 28. Dickens also pointed defamatory statements at Plaintiff Cordish by stating that it took actions in the District. *Complaint*, ¶ 27. Thus, Dickens' defamatory statements, as alleged in the Complaint, were targeted to cause injury to Plaintiffs' business reputations specifically in relation to the District in Kansas City, Missouri. This intent to harm business operations in the District is further evidenced by Dickens' threats to do so in her letter of December 10, 2013. *Complaint*, ¶¶ 14-15; *Exhibit A* of *Complaint*, p. 6.

Defendants mistakenly suggest that Dickens' defamatory statements injured Plaintiffs Cordish and Block 126 in Maryland, the State of Cordish's incorporation and Block 126's organization. In support of this proposition, Defendants cite two District of Kansas opinions that are distinguishable from the facts of this case, as discussed in the following two paragraphs.

In *Boe v. AlliedSignal Inc.*, the Court considered, among other claims, claims of tortious interference with a business relationship and defamation. 131 F. Supp. 2d 1197, 1206 (D. Kan. 2001). While living in Maryland, the plaintiff applied for a position with the SEC in Washington, D.C. *Id.* at 1201. The plaintiff's former employer allegedly made defamatory comments to the SEC, and the SEC thereafter told plaintiff that he was no longer being considered for the job. *Id.* The Court in *Boe* decided to apply Maryland defamation law because the individual plaintiff was living in Maryland when he applied for the job and was rejected for it. *Id.* at 1206. This case is distinguishable from the instant case for two main reasons. First, the plaintiff in *Boe* was an

individual rather than a business organization. *Id.* Second, the injury allegedly caused by the defamation in *Boe* was a failure to hire the plaintiff for a position with the SEC, and the plaintiff received notification of that failure to hire in Maryland. *Id.* Here, the Plaintiffs are business organizations and the injuries alleged are to their business reputations in the Kansas City metropolitan area generally, and specifically with respect to their business operations in the District in Kansas City, Missouri. The Court's decision in *Boe* that the individual's State of residency was the place where he was injured was specific to the facts of that case and not a generally applicable statement of law.

In *Hudson Associates Consulting, Inc. v. Weidner*, the Court decided, in an unpublished opinion, that it would look to the individual plaintiff's domicile as the place where a defamation wrong was felt. 06-2461-EFM, 2010 WL 1980291, *6 (D. Kan. May 18, 2010) (unpublished opinion). The defamation allegation was that a Ron Dysvick made a false stalking report against a Dan Kirsch via email to the Chief of the Grain Valley (Missouri) police department. *Id.* at *3-4. Although three Plaintiffs—Kirsch, Hudson Associates Consulting, Inc., and Knowledge Management Professional Society—brought defamation claims based on this email, the Court rejected two of them and addressed *only* the claim by the individual Kirsch, because the email only made statements against Kirsch. *Id.* at *6 n.37. The other Plaintiffs had apparently argued that the email somehow injured their reputation with their customers in Fort Leavenworth, Kansas, but the Court noted that those Plaintiffs had failed to provide the Court with any evidence of how this had occurred. *Id.* at *6 n.33. The Court thus decided to apply Virginia defamation law because the individual plaintiff was living in Virginia when he was allegedly defamed. *Id.* at *6. This case is distinguishable from the instant case for essentially the same two reasons as with *Boe*. First, the defamation plaintiff in *Hudson Associates* was an individual rather

than a business organization. *Id.* Second, the alleged harm was injury to reputation of an individual who lived in Virginia and apparently did not allege injury to reputation where the defamation occurred (Missouri). *Id.* Here, the Plaintiffs are business organizations and the injuries alleged are to their business reputations in the Kansas City metropolitan area generally, and specifically with respect to their business operations in the District in Kansas City, Missouri. The Court's decision in *Hudson Associates* that the individual's State of residency was the place where he was injured was specific to the facts of that case and not a generally applicable statement of law.

As described above, Dickens defamed Cordish and Block 126 with the intention to harm their business operations in the District in Kansas City, Missouri, and injury to their reputation did occur in the Kansas City metropolitan area. Accordingly, Missouri law should apply to their defamation claims against Dickens. Plaintiffs agree with Defendants that Missouri law controls the defamation claims of Plaintiff Lounge KC, LLC.

The only question raised by Defendants with respect to Plaintiffs' defamation claims is that of absolute privilege. However, there is no absolute privilege under Missouri law for Dickens' statements to the media. Under Missouri law, "the general rule is . . . that defamatory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the case, is absolutely privileged, and it is immaterial that the allegations are false and maliciously made." *Laun v. Union Elec. Co. of Mo.*, 166 S.W.2d 1065, 1069 (Mo. 1942). However, there is no absolute privilege for separate publication of those same allegations in a newspaper. *Id.* (citing *Brown v. Globe Printing Co.*, 112 S.W. 462, 470 (Mo. 1908)).[1] Here,

---

[1] However, "a qualified privilege exists for *the media* to report on the filing of a petition . . . provided the report is accurate." *Hoeflicker v. Higginsville Advance, Inc.*, 818 S.W.2d 650, 652 (Mo. Ct. App. 1991) (emphasis added).

Plaintiffs allege that Dickens made defamatory statements *to reporters*, including newspaper reporters. *Complaint*, ¶¶ 26-30. Even if Dickens, in making such statements to reporters, was merely repeating allegations contained in pleadings, there is no absolute privilege protection for her statements. Accordingly, absolute privilege does not bar Plaintiffs' defamation claims under Missouri law. For this reason, Defendants' motion to dismiss Plaintiff's defamation claims should be denied.

In the event the Court decides that Maryland law should apply to the defamation claims of Cordish and/or Block 126, it is important to note that absolute privilege would not apply to Dickens' defamatory statements to the press even under Maryland law. Defendants cite to *Norman v. Borison*, 17 A.3d 697 (2011), in support of their argument. The only "statement" to the press addressed by *Norman* was an attorney providing a copy of a Complaint to reporters before it was actually filed. *Id.* at 715-16. The court in *Norman* determined that providing a complaint to reporters was "a third-party communication, made extrinsic to an imminent proceeding." *Id.* at 716. "Respondents, at worst, published their allegedly defamatory statements in a draft version of their ultimate pleading, which they handed-over to the press on the same day the pleading was filed." *Id.* Thus, the *Norman* holding does not apply to the facts alleged in this case. Here, Dickens did more than provide a copy of a pleading to the press. She gave multiple taped and live interviews with reporters in which she made multiple defamatory statements about Plaintiffs. Her comments go far beyond notifying the press of the existence of the pleading—a document which is public once it is filed. Thus, Maryland's law of absolute privilege, as articulated by *Norman*, does not shield Dickens from liability for her comments to the press. Accordingly, even under Maryland law, Defendants' motion to dismiss Cordish's and Block 126's defamation claims should be denied.

**Conclusion**

Plaintiffs have sufficiently pled RICO claims against the Defendants, including sufficiently pleading a pattern of racketeering activity. In addition, Plaintiffs have sufficiently pled defamation claims against Dickens, and Dickens' statements to the press are not protected by absolute privilege. Finally, the defamation claims are so related to the RICO claims that they form part of the same case or controversy, such that this Court should exercise supplemental jurisdiction over the defamation claims pursuant to 28 U.S.C. § 1367. For these reasons, and all the reasons articulated in these suggestions, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

FOLAND, WICKENS, EISFELDER,
ROPER & HOFER, P.C.

*/s/ Luke R. Hertenstein*
W. James Foland           KS Fed:  70116
Jacqueline M. Sexton      KS Bar:  19878
Luke R. Hertenstein       KS Bar:  23809
911 Main Street, Suite 3000
Kansas City, MO 64105
(816) 472-7474; (816) 472-6262 (Fax)
Email: jfoland@fwpclaw.com
Email: jsexton@fwpclaw.com
Email: lhertenstein@fwpclaw.com
*ATTORNEYS FOR PLAINTIFFS*

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2014, I electronically filed the above using the Court's ECF system, which will send notice of this electronic filing and a copy of the above to all attorneys of record.

*/s/ Luke R. Hertenstein*
ATTORNEY FOR PLAINTIFFS