## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

The Cordish Companies, Inc.;
Lounge KC, LLC d/b/a Mosaic Lounge;
and Kansas City Live Block 126
Entertainment, LLC,

          **Plaintiffs,**

v.                                          **Case No. 14-CV-2211**

Dickens Law LLC; Linda Dickens;
and Austin Johnston,

          **Defendants.**

### MEMORANDUM & ORDER

Plaintiffs filed this lawsuit against defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, and a state law claim for defamation based on defendants' alleged misconduct in connection with defendants' legal representation of clients in two underlying lawsuits filed against plaintiffs. This matter is presently before the court on defendants' motion to dismiss plaintiffs' complaint (doc. 15). As will be explained, the motion is granted.

**Background**

The following well-pleaded allegations, taken from plaintiffs' complaint, are accepted as true for purposes of defendants' motion. Plaintiff Lounge KC, LLC d/b/a Mosaic Lounge operates the Mosaic Lounge in the "KC Live!" section of the Kansas City Power & Light

District located in Kansas City, Missouri.[1]  In December 2013, defendants (a law firm and two attorneys employed by the law firm) sent a letter to counsel for the Mosaic Lounge alleging that defendants' client, Glen Cusimano, had been wrongfully terminated from his employment at the Mosaic Lounge on the basis of his race.  According to plaintiffs, defendants' letter contained numerous false statements about plaintiffs, including allegations that the Mosaic Lounge directed Mr. Cusimano to employ a Caucasian male (referred to as "a rabbit") for the sole purpose of initiating altercations with African-American patrons in the Lounge such that security personnel in the Lounge would have a basis for removing those patrons from the Lounge; that African-American patrons would then be ejected from the Lounge and from the Power & Light District for a period of one year; that Mr. Cusimano in fact hired Caucasian males for this purpose; and that Mr. Cusimano, an African-American, was ultimately terminated from his employment after he himself was "set up" for a fight by a "rabbit" employed by Mosaic Lounge.  According to plaintiffs, defendants attached to their letter an affidavit from an individual who falsely alleged that he had been employed by the Mosaic Lounge for the purpose of starting altercations with African-Americans so that those patrons would be removed from the club.

According to plaintiffs' complaint, defendants' letter threatened to make their allegations known to the public for the purpose of damaging plaintiffs' business unless defendants agreed to a resolution of Mr. Cusimano's claims.  At the end of December 2013, defendants met with

---

[1] According to the complaint, plaintiff Kansas City Live Block 126 Entertainment, LLC owns the land and is the landlord for the KC Live section of the Power & Light District.  The complaint does not allege the relationship between The Cordish Companies, Inc. and the other plaintiffs.

counsel for plaintiffs to discuss the allegations made in the letter and, according to the complaint, counsel for plaintiff explained how and why the allegations made in the letter were demonstrably false. Plaintiffs allege that defendants nonetheless continued to manufacture false allegations about plaintiffs and to threaten a publicity campaign designed to damage plaintiffs' reputation in the community and to inflict economic injury on plaintiffs. Plaintiffs allege that, at the close of the December 2013 meeting, and in subsequent telephone conversations in January and February 2014, defendants continued to threaten to publicly disclose their false allegations unless plaintiffs agreed to pay settlement money to Mr. Cusimano and defendants.

According to the complaint, plaintiffs refused to pay any money to settle Mr. Cusimano's claims and, as a result, defendants formed a scheme to defraud the public about plaintiffs' business reputation. Plaintiffs allege that defendants, in March 2014, made numerous false statements to various television and radio news reporters, including statements concerning the District's purported desire to minimize the number of African-American patrons visiting the District. These news reporters, as intended by defendants, subsequently published, via television and radio communications, news reports containing the false statements made by defendants. Plaintiffs allege that these false reports have resulted in harm to plaintiffs' business reputations. Plaintiffs further allege that defendants, on two occasions in March 2014, contacted a former employee of another club in the District in an effort to buttress Mr. Cusimano's claims and that defendants harassed that individual and threatened him with litigation when he denied observing race-based behavior in the District.

On February 28, 2014, defendants filed a complaint for damages on behalf of Mr. Cusimano against various entities, including plaintiffs in this lawsuit, in the Circuit Court of

3

Jackson County, Missouri.  This lawsuit contained many of the same allegations made in the December 2013 letter sent by defendants to plaintiffs' counsel.  Two weeks later, on March 10, 2014, defendants filed a class-action lawsuit in the United States District Court for the Western District of Missouri alleging class-wide racial discrimination against African-American patrons in the Power & Light District.  Plaintiffs The Cordish Companies, Inc. and Mosaic Lounge are named defendants in the class action lawsuit.  In May 2014, plaintiffs filed this lawsuit against defendants.[2]

**RICO Claims**

In Count I of their complaint, plaintiffs assert a claim against defendants under § 1962(c) as well as a RICO conspiracy claim under § 1962(d).  Specifically, plaintiffs allege that defendants wrongfully attempted to obtain settlement money from plaintiffs through the threat of economic harm; that defendants made false statements to the public as part of a scheme to defraud the public about plaintiffs' business reputation; that defendants wrongfully attempted to influence the testimony of a potential witness; and that these acts constitute a "pattern of racketeering activity" in violation of RICO.

Defendants move to dismiss plaintiffs' § 1962(c) claim for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A complaint challenged by a Rule 12(b)(6) motion to dismiss must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir.

---

[2] The facts concerning the underlying lawsuits filed by defendants are not included in the complaint, but plaintiffs do not object to the court taking judicial notice of those filings for purposes of defendants' motion.

2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Federal Election Comm'n.*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Factual allegations must be "enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

18 U.S.C. § 1962(c) makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1268 (10th Cir. 2006) (citations omitted). In their motion to dismiss, defendants contend that plaintiffs' complaint fails to satisfy the requirement of a "pattern" of racketeering activity.

A "pattern" of racketeering is defined as "at least two acts of racketeering activity . . . which occurred within ten years" of each other. 18 U.S.C. § 1961(5). "However, because RICO is not aimed at the isolated offender, proof of two or more predicate acts [is] not sufficient to prove a pattern unless there is a relationship between the predicate acts and a threat of continuing activity." *Hogan*, 453 F.3d at 1267-68 (citations omitted). Continuity of threat requires proof of "a series of related predicates extending over a substantial period of time," or a "showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . or that the predicates are a regular way of conducting the defendant's ongoing

legitimate business or the RICO enterprise." *Id*. at 1268; *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) (plaintiffs satisfy continuity prong of pattern element by establishing "closed-ended" continuity or "open–ended" continuity).   To determine continuity, the court examines both the duration of the related predicate acts and the extensiveness of the RICO enterprise's scheme.  *Hogan*, 453 F.3d at 1268.

In their response to the motion to dismiss, plaintiffs clarify that they have alleged only open-ended continuity with respect to their RICO claims.[3]  Plaintiffs allege in their complaint in conclusory fashion that defendants have engaged in activity that "threatens to extend into the future."  As further fleshed out in their submissions, plaintiffs contend that defendants' conduct necessarily will extend into the future because defendants have not yet achieved their goal of either forcing defendants to pay settlement money or obtaining a judgment against defendants. Plaintiffs, then, urge that defendants' conduct will cease only when the underlying litigation ends, either through settlement or a judgment.

Plaintiffs have not alleged the type of long-term criminal activity against which the RICO statute is aimed.  *See Erikson*, 151 Fed. Appx. at 678.  Rather, plaintiffs have described a single scheme on the part of defendants to obtain settlement money or a judgment directed at a finite group of entities, with no potential to extend to other persons or entities.  *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (dismissal of RICO complaint appropriate under Rule

---

[3] Because the predicate acts alleged by plaintiffs—from the December 2013 demand letter through the filing of the class action lawsuit—span roughly six months, plaintiffs would not be able to establish closed-ended continuity.  *See H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 242 (1989) (predicate acts extending over a few months are insufficient to establish closed-ended continuity); *Erikson v. Farmers Group, Inc*., 151 Fed. Appx. 672, 678 (10th Cir. 2005) (predicate acts that occurred exclusively during discovery—a period not exceeding a few months—insufficient to demonstrate closed-ended continuity).

12(b)(6) for failure to satisfy continuity requirement where complaint alleged only that defendants engaged in a single scheme to accomplish discrete goal of transferring uranium mining interests to another corporation); *Erikson,* 151 Fed. Appx. at 678  (no threat of continuing criminal conduct where plaintiff alleged that defendants engaged in single scheme to obtain information about a finite group of individuals); *Boone v. Carlsbad Bancorporation, Inc*., 972 F.2d 1545, 1556 (10th Cir. 1992) (no threat of continuing illegal activity where plaintiff alleged a series of predicate acts constituting a single scheme to accomplish a discrete goal directed at a finite group of individuals with no potential to extend to other persons or entities); *SIL-FLO, Inc. v. SFHC, Inc*., 917 F.2d 1507, 1516 (10th Cir. 1990) (no threat of continuing illegal activity where plaintiff alleged "single scam affecting a single mark").

Apart from the complaint's failure to allege the requisite continuity, dismissal of plaintiffs' § 1962(c) claim is appropriate because plaintiffs have alleged conduct that constitutes "legitimate acts" on the part of attorneys "acting on behalf of a client in the course of pending litigation."  *See Morin v. Trupin*, 711 F. Supp. 97, 105-06 (S.D.N.Y. 1989) (letter sent by attorney-defendant demanding payment on notes which defendant allegedly knew to be unenforceable failed to constitute predicate act under RICO).  As the court explained in *Morin*:

> Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation. . . .  Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation.

*Id*. at 105 (quoting *Spiegel v. Continental Ill. Nat'l Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985); *Paul S. Mullin & Assoc., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) ("The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which

states a client's legal position in a dispute can constitute mail fraud.  If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation.").  Even if, as plaintiffs allege, defendants' statements amounted to extortion, those statements cannot form the basis of a RICO claim.  *See I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) (rejecting RICO claim where defendant threatened lawsuit if plaintiff did not pay debts).  While plaintiffs have alleged that defendants, in their representation of clients, were overly zealous and even malicious, any remedy lies in a state law tort action rather than a federal RICO claim.  *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997) (noting that it would be "extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney)."); *Melton v. Blankenship*, 2009 WL 87472, at *3 (6th Cir. Jan. 13, 2009) (efforts and filings made by lawyers on behalf of clients, even if overly zealous and malicious, cannot be considered RICO predicate acts); *Meier v. Musburger*, 588 F. Supp. 2d 883, 902 (N.D. Ill. 2008) (predicate act requirement is not satisfied by merely allegeing unethical conduct by a lawyer).

In sum, plaintiffs' complaint fails to satisfy RICO's continuity requirement and dismissal of plaintiffs' § 1962(c) claim is appropriate.  Moreover, because dismissal of plaintiffs' § 1962(c) claim is appropriate, dismissal of plaintiffs' RICO conspiracy claim is required.  *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d).")

**Defamation Claim**

In Count II of their complaint, plaintiffs allege a defamation claim against defendant Linda Dickens based on allegedly false statements made by Ms. Dickens to news reporters in March 2014.  Because the court has dismissed plaintiffs' federal-law claims, the court exercises its discretion under 28 U.S.C. § 1367(c) and declines to exercise supplemental jurisdiction over plaintiff's defamation claim, particularly as a scheduling order has yet to be entered in this case and discovery has not yet commenced.  *See Tonkovich v. Kansas Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (given lack of pretrial proceedings, including total absence of discovery, considerations of judicial economy, convenience and fairness did not favor retaining jurisdiction).  This claim, then, is dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 15) is **granted.**  Plaintiffs' RICO claims are dismissed with prejudice and plaintiffs' defamation claim is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 27th day of August, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

9